CURTIS L. TAYLOR v. NORTH CAROLINA DEPARTMENT OF CORRECTION

No. 8710IC54

(Filed 19 January 1988)

1. State § 8.3; Convicts and Prisoners § 3— one prisoner inspired by another— sufficiency of evidence to support findings of fact

Evidence was sufficient to support the Industrial Commission's findings of fact that correctional officers placed plaintiff and another prisoner in the same cell over plaintiff's protest; plaintiff had been fighting with associates of his cell mate; the associates and other prisoners made more than usual noise and encouraged the cell mate to assault plaintiff; the cell mate did in fact threaten, beat, and sexually assault plaintiff; and no correctional officer investigated the noise or made any regular rounds that night.

2. State § 8.3; Convicts and Prisoners § 3— one prisoner injured by another— negligence of defendant in providing proper care

Defendant had a duty of reasonable care to protect plaintiff from reasonably foreseeable harm, and the Industrial Commission properly applied this standard in finding that defendant was negligent in failing to exercise proper care in this case where the Commission found that defendant was put on notice that plaintiff inmate was in danger; defendant failed to heed that warning; defendant did not respond to excessive noise from inmates; and defendant's employee failed to make his normal rounds.

APPEAL by defendant from Order of North Carolina Industrial Commission entered 8 September 1986. Heard in the Court of Appeals 4 June 1987.

*Milford K. Kirby and Reginald L. Frazier for plaintiff appellee.*

*Monroe, Wyne, Atkins & Lennon by George W. Lennon for defendant appellant.*

COZORT, Judge.

Plaintiff, Curtis L. Taylor, was an inmate confined to the North Carolina Department of Correction, beginning his term of incarceration on or about 20 January 1981. He was assigned to the Harnett Youth Center, where, on or about 17 February 1981, he was involved in a fight with two other inmates, Howard Cheers and Albert Williams. All three inmates were placed in segregation cells. Inmate Darrell Hamilton was later placed in the same cell with plaintiff. Plaintiff was assaulted by Hamilton. Hamilton later pled guilty to a criminal charge of crime against nature in which plaintiff was alleged to be the victim. Plaintiff filed an action against the North Carolina Department of Correction under the State Tort Claims Act, alleging that correctional officers were negligent in placing Hamilton and plaintiff in the same cell after Taylor had warned officers there would be trouble if Hamilton were placed in his cell. Plaintiff's allegations included a claim that plaintiff was sexually assaulted by Hamilton forcibly performing anal intercourse on him. A deputy commissioner of the Industrial Commission found and concluded that the sexual assault and battery suffered by the plaintiff was proximately caused by the negligence of a Department of Correction officer. Plaintiff was awarded recovery in the amount of $7,500. On appeal to the Full Commission, the pertinent findings and conclusions regarding negligence were affirmed unanimously; however, the award was increased to $15,000. The Department of Correction appealed to this Court, contending primarily that the Commission erred by finding and concluding that the criminal assault was proximately caused by the negligence of the officer. We affirm.

In its first two assignments of error, the defendant, North Carolina Department of Correction, contends that the Industrial Commission erred in finding negligence by Officer Charles Neal and that the Industrial Commission erred in finding that any negligence by defendant was a proximate cause of the intentional

criminal assault on the plaintiff by Darrell Hamilton. We find no merit to these contentions.

[1]   The Industrial Commission's findings of fact are conclusive on appeal when supported by competent evidence, even though there is evidence which would support findings to the contrary. Appellate review is limited to two questions of law: (1) whether there was any competent evidence before the Commission to support its findings of fact; and (2) whether the findings of fact of the Commission justify its legal conclusion and decision. *Bailey v. Dept. of Mental Health*, 272 N.C. 680, 684, 159 S.E. 2d 28, 31 (1968). We shall first consider whether the Commission's pertinent findings were supported by competent evidence.

The crucial findings of fact made by the Commission below are:

9. On February 17, 1981 during the second shift, Darrell Hamilton, a known associate of the two inmates with whom plaintiff had been fighting, was placed in the same segregation cell with the plaintiff. Plaintiff asked the officer who escorted Hamilton to the cell, not to put Hamilton in his cell, but his plea was to no avail. It is unclear which officer physically put Hamilton in plaintiff's cell, but it is clear that Officer Neal did not make the cell assignment.

* * * *

13. For about one hour after Hamilton was put in plaintiff's cell, he was being agitated by the others with whom plaintiff had been fighting to harass the plaintiff. The inmates, whom plaintiff had been fighting, passed urine to Hamilton in cups and he made plaintiff drink it. Plaintiff was afraid. Hamilton beat, choked and threatened plaintiff. He made plaintiff wash his clothes in the commode and lick his anus. Hamilton raped plaintiff by forcibly performing anal intercourse on him.

14. Plaintiff was too afraid to holler for help; however, Officer Neal should or could have heard the noise from the agitation by the prisoners that lasted for at least an hour if he had been exercising the proper supervision and observation of the prisoners.

\* \* \* \*

20. Officer Neal would normally make rounds through the cell blocks every 15 to 20 minutes except when interrupted by showers and feeding. From 2:00 p.m. to 4:00 p.m. Neal escorts inmates, one at a time, to shower and back to the cell. After that, he serves their meal trays. After that, any inmates who did not shower get to shower. Thereafter, Neal should have made his regular rounds at 15 to 25 minute intervals.

21. On February 17, 1981, except to handle the showers and the feeding, Officer Neal did not make his regular rounds in the segregation [cell] until approximately 9:00 p.m. when plaintiff asked to talk to him and ultimately report this incident.

22. Officer Neal neglected his duty to make periodic checks to safeguard the inmates from dangerous conditions, e.g. sexual assaults. Officer Neal did not exercise reasonable care to maintain security and prevent assaults and conflicts between these problem inmates.

23. Because these were problem inmates, it was foreseeable that they would be in conflict with each other and a hazard to each other. It was also foreseeable that sexual assaults were a hazard at the Youth Center and that was known to Officer Neal.

24. Officer Neal should have reasonably foreseen that inmates might be assaulted by each other if he failed to make the usual periodic checks for security and safety maintenance.

25. Officer Neal had knowledge of the need and legal duty to insure the adequate protection of the prisoners from violence and assaults and was negligent, when by the simple exercise of proper care, the acts of violence complained of herein should or might have been forseen [sic] and prevented.

26. The negligence of Officer Neal was a proximate cause of the sexual assault and battery suffered by the plaintiff.

The Commission then made its crucial conclusion of law:

2. On or about February 17, 1981, defendant's-employee, Officer Charles Neal, negligently failed to exercise due care in his supervision of the plaintiff to protect him from violence and assault and battery that by the exercise of proper care should have been reasonably foreseen and prevented. Plaintiff has suffered . . . emotional disturbance as a proximate result of the negligence of defendant's-employee. (Citation omitted.)

Our review of the record and transcript from the hearing below leads us to the conclusion that there is competent evidence to support the dispositive findings made by the Commission. Plaintiff testified that he got in a fight with Cheers and Williams on 17 February 1981 and was sent to segregation. Darrell Hamilton, an associate of Cheers and Williams, came to his cell. Plaintiff asked the officer who brought Hamilton back there not to put Hamilton "in the cell with me because there would be trouble, which he was an associate of Albert and Howard Cheers, but my request was denied. When I asked him not to put them in there with me he told me to shut up and put Darrell Hamilton in the cell with me anyway." Plaintiff further testified that Williams and Cheers were in the cell next to plaintiff and Hamilton. Hamilton started beating and threatening plaintiff. Plaintiff testified that he was "hollering for the man, but the man didn't come back there at the time so he made me have sex with him, and I didn't want to have no sex with him, and the officer wouldn't come back there and I kept hollering." Plaintiff testified that he could not remember which officer put Hamilton in the cell with him.

Tommy Wilson Dunn, an inmate who was also confined at the Harnett Youth Center in February of 1981, testified that he was in the cell beside plaintiff Taylor on 17 February 1981. He testified that when Hamilton was brought to Taylor's cell, he heard Taylor "say that for him not to put that man in his cell, if they did there was going to be trouble." Dunn further testified that the noise level on the cell block was above average because the other inmates were "boosting" or "agitating" Hamilton. The noise level continued for an hour or an hour and a half. Dunn further testified that no correctional officer made any regular rounds that night.

This evidence is clearly sufficient to support the findings of fact made by the Commission, even though the defendant offered evidence to the contrary and through skillful cross-examination cast doubt upon the credibility of plaintiff's witnesses. Those issues are to be resolved by the Commission as the finder of fact. They are not to be determined by this Court as the reviewing court. Thus, we find there was sufficient, competent evidence to support the Commission's findings of fact.

[2] The next issue to be determined is whether the Commission's conclusion of law relating to negligence and foreseeability of harm was correct. In *Dunn v. Swanson*, 217 N.C. 279, 7 S.E. 2d 563 (1940), the Supreme Court held that the plaintiff in that case had stated a cause of action by alleging that a sheriff was negligent for placing plaintiff's weak, sick and helpless husband in a cell with a violently insane man who during the night killed him by beating him with a table leg which had been left in the cell by the sheriff and jailer. In *Williams v. Adams*, 288 N.C. 501, 219 S.E. 2d 198 (1975), the court held that a complaint against a sheriff should not have been dismissed when it claimed that the death of a prisoner was caused by the negligence of the sheriff's officers in not providing the proper medical attention. In that case, Justice Moore, speaking for the court, observed:

> [T]he author of a note in 19 N.C. L. Rev. 101 (1940-41) states that *Dunn v. Swanson, supra*, is in accord with the general rule that "a prison official is liable when he knows of, or in the exercise of reasonable care should anticipate, danger to the prisoner, and with such knowledge or anticipation fails to take the proper precautions to safeguard his prisoners."

*Id.* at 504, 219 S.E. 2d at 200. *See also Helmly v. Bebber*, 77 N.C. App. 275, 335 S.E. 2d 182 (1985). From a review of these cases we conclude that defendant had a duty of reasonable care to protect the plaintiff from reasonably foreseeable harm. We further conclude that the Commission correctly applied this legal standard in finding that the defendant was negligent in failing to exercise proper care in this case. The Commission found as fact that defendant was put on notice that the plaintiff was in danger; the defendant failed to heed that warning; the defendant did not respond to excessive noise from inmates; and the defendant's employee failed to make his normal rounds. Thus, while we

recognize that the Department of Correction is not an insurer of the safety of every inmate and will not be found liable for negligence every time one inmate assaults another, the evidence below supported the Commission's findings and conclusions of negligence in this particular case.

Defendant has contended further that even if the findings of the Commission were supported by competent evidence, such negligence was not the proximate cause of the plaintiff's injury because the criminal assault by inmate Hamilton was an intervening, intentional act which relieved the defendant of liability. We find no merit whatsoever to this contention, and we reject it without further discussion.

Finally, the defendant contends that the Commission erred by receiving in evidence the entire transcript of a deposition of Officer Neal, who was available to testify at the hearing. We have reviewed the entire deposition of Officer Neal which was admitted. We conclude that, even if its admission was technically error, the deposition did not prejudice the defendant. All of the crucial findings of fact made by the Commission were supported by other competent evidence. As we stated in *Warren v. City of Asheville*, 74 N.C. App. 402, 328 S.E. 2d 859, *disc. rev. denied*, 314 N.C. 336, 333 S.E. 2d 496 (1985), not every error in the admission of evidence is grounds for a new trial or setting aside a verdict. The burden is on the appellant to show the court how he was prejudiced and that a different result would have likely ensued had the error not occurred. *Id.* at 409, 328 S.E. 2d at 864. The defendant herein has failed to carry this burden.

For the foregoing reasons, the Opinion and Award of the Industrial Commission is

Affirmed.

Judges BECTON and MARTIN concur.

Judge MARTIN concurred in this opinion prior to 31 December 1987.