The undersigned have reviewed the prior Decision and Order based upon the record of the proceedings before Deputy Commissioner Lawrence Shuping. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Decision and Order.
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. Plaintiff is a 24-year-old male, who has been blind since suffering a gunshot wound to his head in 1989. On July 9, 1993 after multiple felony convictions in Iredell County, the Superior Court sentenced him to 32 years in prison. He initially arrived at Central Prison in Raleigh for processing and like all other newly admitted inmates to the prison system, was initially housed in "K" dormitory while undergoing orientation until his classification and ultimate destination in the prison system could be determined.
2. "K" dormitory held a maximum of 96 inmates and consisted of a central day room area, which had twelve bunks, and five surrounding dormitory rooms, where the remaining 36 bunks were located. There were two correction officers assigned to "K" dorm each shift, one of whom was responsible for patrolling the dormitory. The other officer remained in the office located in the day room area at the front of the dormitory immediately adjacent to dorm room 5. The interior of each of the five dormitory rooms were visible from the day room area outside the rooms and their doors always remained open to allow the inmate population access to the bathroom.
3. At the time of his incarceration prison policy and procedure required that blind inmates such as plaintiff be integrated with the regular prison population. Although his blindness did not require special housing, because of his blindness plaintiff was more vulnerable to other inmates and needed additional protection. As with all inmates, prison officials were under a duty to protect them from reasonably foreseeable harm, including sexual assaults. In the case of a blind inmate such as plaintiff, prison officials were required to be even more vigilant because of the blind inmates vulnerability to other inmates.
4. When plaintiff arrived at "K" dorm, he was initially assigned to a bunk in dorm 5, which was the dorm immediately adjacent to the office at the front of the dormitory where at least one correction officer always stayed. During the course of his orientation plaintiff was advised to immediately notify a staff member of any problems with other inmates, but had no problems during the approximate three weeks that he was assigned to dorm 5 prior to the attempted sexual assault on him on August 1, 1993. He had not requested a bunk re-assignment nor did the staff at the unit then have any reason to believe that plaintiff's original bunk assignment did not satisfactorily accommodate any additional vulnerability that he might have to other inmates requiring his needing additional protection because of his blindness.
5. On the night of August 1, 1993 as he was standing next to his bunk in dorm 5 getting ready to take a shower, two inmates came up behind plaintiff and attempted to sexually assault him by sticking a broomstick in his rectum before another inmate broke up the attack. In the course of the same attack plaintiff sustained the physical and emotional injuries giving rise to the instant claim.
6. There is no evidence that one or both of the two correctional officers on duty were not regularly patrolling "K" dorm, or that they otherwise knew or should have known that the attempted assault was occurring and failed to prevent plaintiff from being injured by timely breaking up the same assault. Plaintiff did not notify any of the staff that night of the attempted assault, but did on the following morning when he sought medical treatment at the emergency department of Central Prison's hospital.
7. After the attempted assault, plaintiff was re-assigned to a bunk next to the sergeant's desk in dorm 5. However, in view of not only the fact that plaintiff's original bunk assignment was also in the same dorm, which was located at the front of "K" dormitory immediately next to the office, plaintiff did not experience any problems with any other inmates as a result of his original bunk assignment during the three weeks that he was there prior to the two other inmates attempting to sexually assault him on August 1, 1992. He did not request another bunk assignment or indicate that he had any problems with his original one. The staff did not fail to exercise due and reasonable care in plaintiff's original bunk assignment in dorm 5 of "K" dormitory because they had no reason to believe that the same bunk assignment did not adequately protect plaintiff from other inmates.
* * * * * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSION OF LAW
At the time complained of there was no actionable negligence on the part of any named or unnamed employee, servant, agent or representative of defendant North Carolina Department of Corrections in the course of making plaintiff's bunk assignment that proximately resulted in the physical and emotional injuries sustained when two other inmates attempted to sexually assault him. Taylor v. N.C. Dept. ofCorrections, 88 N.C. App. 446, 363 S.E.2d 868 (1988).
* * * * * * * * * * * * * *
The foregoing stipulations, findings of fact and conclusions of law engender the following
ORDER
IT IS THEREFORE ORDERED that plaintiff have and recover NOTHING and that his claim be DISMISSED with prejudice.
Each side shall bear its own cost.
FOR THE FULL COMMISSION
 S/ _______________________ COY M. VANCE COMMISSIONER
CONCURRING:
S/ _______________________ DIANNE C. SELLERS COMMISSIONER
S/ _______________________ LAURA K. MAVRETIC COMMISSIONER
CMV/cnp/mj 9/24/96